IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

**LARA M. MANSELL**             **PLAINTIFF**

VS           Case No. 1:20cv005-SA-DAS

**CITY OF TUPELO POLICE DEPARTMENT; CHAMILA BROWN IN HER OFFICIAL AND INDIVIDUAL CAPACITY; JOHN DOES 1-10**      **DEFENDANTS**

---

**PLAINTIFF'S COMPLAINT**
**JURY TRIAL DEMANDED**

---

COMES NOW Plaintiff, LARA M. MANSELL, and brings this Complaint pursuant to Rule 15(a) of the Federal Rules of Civil Procedure. This is an action to recover damages against Defendant for sexual harassment, a hostile work environment, and retaliation, as well as assault and excessive force. This action is to recover actual damages to include denied future wages, back pay, compensatory damages, punitive damages, medical costs, and attorney fees. The actions of the Defendants constitute violations of the Title VII of the Civil Rights Act of 1964 and 42 U.S.C. Section 2000e, *et seq*. and 42 U.S.C. Section 1983.

## THE PARTIES

1. Plaintiff, Lara M. Mansell, (hereinafter referred to as "Lara") is an adult female resident citizen of Lee County, Mississippi

2.     Defendant, City of Tupelo, Mississippi Police Department, is the police department for Tupelo, Mississippi, and a political subdivision of the State of Mississippi and may be served with process through Mayor Jason Shelton at 71 East Troy Street, Tupelo, Mississippi.  Chamila Brown is an adult resident citizen of the state of Mississippi, believed to be a resident of Lee County and believed to be employed as an officer within the Amory School District.  Defendants John Does 1-10 are individuals who may have specific liability in this cause of action and who will be named at a later time.  At all times all defendants were acting under color of state law.

## JURISDICTION

3.     This action arises under Title VII and 42 U.S.C. Section 2000e, *et seq*., and the United States Constitution and under 42 U.S.C. Section 1983.

4.     This Court has federal question jurisdiction and venue is proper to 42 U.S.C Section 2000e-5(f)(3).

5.     A right to sue letter was issued by the U.S. Equal Employment Opportunity Commission on October 10, 2019.  A true and correct copy of the Equal Employment Opportunity Notice of Right to Sue is attached hereto as Exhibit "A".

## STATEMENT OF FACTS

6.     Lara started employment with the Tupelo, Mississippi Police Department (TPD) on April 18, 2016 as an Administrative Assistant, under the direct supervision of Lieutenant Brian Brown.

7.     Lara reported to Lt. Brown, and her duties were administrative and clerical in nature.

8.     Lt. Brown started making unwanted advances to towards Lara shortly after she started her employment with TPD.  Lt. Brown was married to Sargent Chamila Brown, also a TPD police officer, at the time.

9.      These advances continued in the work place and extended to social events attended by employees of the Tupelo Police Department.

10.     For example, Lara attended a social event at Steele's Dive in Tupelo, Mississippi. As Lara was leaving the event Lt. Brown approached her and began making unwanted sexual advances towards her, including physically groping her.  She knew he was intoxicated and she attempted to play it off and got away from him as soon as she possibly could.

12.     When Lara returned to work following the sexual assault by her boss she was in fear of losing her job because she did not comply with her boss's sexual advances.  She was frightened and unsure of what to do.  The harassment and unwanted advances continued and increased in intensity over the next several weeks.

13.     One evening Lara attended a social event at a local restaurant/bar with a number of co-workers from the police department.   After visiting for a while, Lara left for her car, unbeknownst to her, Lt. Brown followed her to her car.

14.     Lara attempted to drive out of the parking lot when Lt. Brown stood in the path of her car and tapped on her window.  Lara stopped and rolled down her window.

15.     Lt. Brown shoved his upper body in the window and forcibly kissed Lara.  He then sexually assaulted her by jamming his hands down the front of her pants.  Lara was scared and in shock.  She shoved Lt. Brown as hard as she could and immediately rolled up her window and drove away.  She watched in her rearview mirror as Lt. Brown casually walked away.

16.     The next day Lt. Brown approached Lara at her desk and stated, "I don't know if you know this about me or not, but I always get what I want."

17.     Lara believed her job was in jeopardy at that time due to her boss's demeanor and particularly in light of his statement that he always gets what he wants.  Lara loved her job and was afraid that Lt. Brown would fire her if she continued to refuse his efforts

at a sexual relationship. She eventually gave in to his advances and began a romantic relationship with her boss, Tupelo Police Lieutenant Brian Brown. At all times during the relationship she was his subordinate and he was her superior.

18. Lt. Brown showered Lara with affection, often professing his great love for her and constantly telling her beautiful she was. Lt. Brown convinced Lara that his wife did not love him, and that she abused him. Lt. Brown promised Lara that he was going to divorce his wife and marry her. These actions by Lt. Brown occurred during the work day at the Tupelo Police Department and the parties often engaged in sexual acts while on duty with the Tupelo Police Department.

19. Lara had recently broken up with a long term boyfriend and was extremely vulnerable. Lara previously shared this information with Lt. Brown and he appeared to be very supportive and understanding. In hindsight it is clear he was neither of the two, that he was exploiting her vulnerability in order to control her sexually.

20. Lt. Brown had sexual relations with Lara on numerous occasions at the Tupelo Police Department/Northeast Mississippi Law Enforcement Academy. Lt. Brown controlled Lara's schedule and basically her life. This continued for a period of months. Lt. Brown constantly professed his love for Lara, assuring her they would be together forever. They made plans for the future, including the purchase of an RV and a trip around the country. Lt. Brown frequently visited Lara in her home and spent every spare minute with her. This continued for a period of months and it was apparent to others at the Tupelo Police Academy that the relationship had changed. This was not an unusual event within the Tupelo Police Department. In fact, there have been numerous sexual relationships between members of the Tupelo Police Department, including superior/subordinate relationships. This has resulted in a certain culture within the department that is known to employees as well as administration.

21. Late in the evening of October 11, 2016 Sargent Chamila Brown, Lt. Brown's wife, called Lara. It seemed strange to Lara and Lara did not answer the phone. Lara

had been with the Browns and a group of TPD employees earlier in the evening Lara knew that Lt. Brown was intoxicated. She went to bed without giving it much thought.

22. Shortly thereafter Lara was startled by loud noises coming from outside her home. Lara immediately recognized the voice of Sargent Chamila Brown. Sargent Brown was at Lara's front door screaming and hitting the door and the home with some sort of object, later determined to be her police issued collapsible baton. Sargent Brown ran around the lawn and the home, tearing the screens from the window fittings. Sargent Brown hit the door so hard it set off the home alarm.

23. Lara was unsure what to do and was concerned about her neighbors. At that point, her goal was to calm the situation. She opened the wooden door in an effort to find out exactly what was going on and to get Sargent Brown to be quiet. When Lara opened the wooden door Sargent Brown then forced her way in the house through the screen door. Sargent Brown continued her screaming, calling Lara numerous names and physically abusing Lara. Sargent Brown used her collapsible baton to destroy Lara's property while she was threatening to kill Lara. She shoved Lara to the ground and stood over her screaming that she was going to kill her. Lara truly believed the threats by Sargent Brown and Lara consistently denied the accusations that Sargent Brown was making about Lara and Lt. Brian Brown. Sargent Brown was in a fit of uncontrollable rage and Lara was in grave fear for her life.

24. Sargent Brown finally left the home; leaving Lara collapsed, bruised and battered in the destroyed foyer of her home.

25. Soon thereafter Lt. Brown sent Lara a text that he was going to take his own life. Lara was in fear for Lt. Brown and tried to reach out to Sgt. Brown in an effort to possibly prevent the suicide of Lt. Brown. Sgt. Brown told Lara to mind her own business.

26. Soon thereafter Captain Tim Clouse called Lara wanting to know what was going on. Lara informed him of the situation and of her concerns about Lt. Brown. She

advised him of what she knew – that Lt. Brown was threatening suicide and that Sgt. Brown had attacked her after breaking into her home. Lara did not hear from Captain Clouse or the Browns the remainder of the evening.

27. Captain Clouse visited Lara in her office the next day. He advised that Lt. Brown was in the hospital after overdosing on the prescription drug Ambien. He asked Lara a number of questions about the situation which had led up to the events the previous evening.

28. Captain Clouse advised Lara to "keep her mouth shut" if she wanted to keep her job. This terrified Lara but Captain Clouse assured her that she would be fine if she would just keep quiet. This was a lie and a fraudulent act on the part of Captain Clouse and, by extension, the Tupelo Police Department. Captain Clouse had no intentions of protecting Lara or of insuring her safety, despite his statements to the contrary.

29. As a direct result of this (fraudulent) instruction by Captain Clouse, Lara did not file any complaint nor did she speak with any other person in the TPD about this matter. Lara learned that a number of people within the Tupelo Police Department knew of the situation, as well as a number of outside "partners" of TPD, such as paramedics and first responders. None of these people reported the situation to anyone other than Captain Clouse, who chose to conceal the harassment and the crimes committed by the Browns. At no time did Captain Clouse advise Lara of any rights that she might have as an employee and subordinate of Lt. Brown or as a victim of the crimes of Sgt. Brown. Captain Clouse made it clear that the best thing for Lara to do was to keep her mouth shut. That is exactly what Lara did for the next two years. This was the beginning of the conspiracy to keep the unethical and illegal actions of Lt. Brown and Sgt. Brown hidden from the public. There was a concerted effort and/or a conspiracy on the part of Tupelo Police Department, by and through its administration to conceal the actions of the Browns.

30.     The morning after Sgt. Brown broke into Lara's home and assaulted her, Lara received a series of messages from Sargent Brown.  Sgt. Brown informed Lara that she "had better find another place to go if she knew what was good for her".

31.     Lara was terrified for her job, but more importantly, for her safety.  Lara knew that Sgt. Chamila Brown had a good bit of power or "pull" within the department.  Lara knew that Sgt. Brown was given certain favors not available to other officers.  For example, Lara was aware that Sgt. Brown had failed to properly qualify during firearms training, but was deemed properly qualified anyway.  Lara also knew that Sgt. Brown had not fairly passed her Sargent's exam, but that she was allowed to cheat in order to pass.  Lara believed that the Browns were "untouchable" while she was just a lowly hourly employee within the department.  Lara also knew that there was a culture of illicit sexual relationships within the Tupelo Police Department.  Lara was aware of more than one "affair" between subordinates and their superiors.  This was a common scenario and one that had been overlooked for years.  Lara was further aware that women were simply treated differently from men.  Straight females within the Tupelo Police Department were "fair game" for harassment, intimidation and general disrespect.  Lara had been constantly subjected to sexual harassment by various employees of the police department.  For example, Lara was the only female in an office where a poster depicting naked women riding bicycles was on full display.  Furthermore, Lara had been the victim of Lt. Bobby Carnathan, a long term employee of Tupelo Police Department who harassed her frequently, even after she left the Tupelo Police Department.  Knowing these facts Lara felt extremely vulnerable and helpless.  She was afraid to report any of the unethical and unlawful acts against her and she was desperate to maintain her job.  At no time did her superiors help her or advise her of any rights she had or of any relief she might seek.  Instead the "powers that be" chose to enter into a conspiracy to keep Lara quiet.  That conspiracy was successful.

32.     Lt. Brown eventually returned to work and continued to demand sexual favors from Lara.  Lara gave in to his demands out of fear for her job.  However, she was just as

afraid for her safety from Sgt. Brown. Sgt. Brown began a campaign of harassment against Lara that ended only when the unlawful actions of the Browns were reported to the administration and the Browns were given the choice to resign or be fired.

33. Lara held on to her job as she had been promised the job of "purchaser" by Deputy Chief Allen Gilbert. Deputy Chief Gilbert would often visit the academy and chat with Lara at her desk. He asked Lara if she would be interested in the position of purchaser, which would be a promotion and a job she very much wanted. During these conversations Deputy Chief Gilbert always found a way to bring up the hopeless state of his marriage. He offered the job of purchaser to her in the same conversation wherein he told her that his wife would not care if he were to have an affair.

34. Meanwhile, Sgt. Brown stalked Lara. She would "show up" at Lara's job assignment and would use her TPD weapons in a menacing way. She would constantly drive by Lara's home in her patrol car and stare at Lara if Lara made eye contact with her. At this point Lara was so distraught she was in counseling and had obtained a roommate as she was terrified of Sgt. Brown returning to her home and making good on her threat. Lara had lived independently for many years but was unable to continue to do so out of fear. Lara lost close to forty (40) pounds during this period of time.

35. During this time period there was a break in at the offices of the academy. It was common knowledge among the TPD staff that Sgt. Brown committed the break in. This terrified Lara beyond belief as she felt that her safety was compromised and that the Browns were literally untouchable and could get away with anything they desired. Again, there was a long standing culture of illicit sex between officers at TPD. At the same time Lt. Bobby Carnathan was constantly harassing Lara with his lewd and lascivious statements. Deputy Chief Allen Gilbert was dangling the idea of a job promotion while bemoaning the state of his marriage. Lara felt she had no choice but to leave.

36. Lara secured another job within the city of Tupelo that was much less desirable and not nearly as fulfilling as her job within the police department. However, Lara

accepted that job to try and protect herself from the Browns as it was clear to her that the Tupelo Police Department had no intentions of protecting her and had, in fact, lied to her and defrauded her by assuring her that she would be safe from the Browns, and further, that she would be given another job within the department that would remove her from the Browns.

37.   Lara did not immediately report the illicit actions of the defendants out of her extreme fear for her safety.  Furthermore, her immediate supervisors and at least one captain knew of the hell she was enduring and did nothing to help her or to protect her rights in any way whatsoever.  Lara was unaware of any rights she might have with regard to her job and believed if she remained at the police academy she would be forced to maintain a sexual relationship with Lt. Brown while being threatened by Sgt. Brown.  There was a conspiracy, or at least a *de facto* conspiracy, to cover up the actions of the Browns and others involved in the sordid efforts to silence Lara.  That conspiracy continued (to Lara's detriment) until someone notified the upper administration of the events.  Lara never told anyone what happened to her and would have carried the secrets to her grave out of fear of retaliation.  The Browns were allowed to leave their jobs with no disciplinary action on their record.  They remain in law enforcement despite their obvious unfitness to do so.  Sgt. Brown was never prosecuted for the criminal acts she committed against Lara, and in fact, upon information and belief, wears a badge and gun every day.  Lt. Carnathan was given a slap on the wrist for his role in the hell that was Lara's life at the Tupelo Police Academy.  He has since retired and upon information and belief, enjoys all the benefits of retirement.

The defendants acted fraudulently and with malice in their efforts to silence Lara and to prevent her filing a claim with the Equal Employment Opportunity Commission.  The defendants knew and/or should have known that Lara was entitled to pursue a claim to protect herself and her job.  However, due to the unlawful actions of the defendants she was unable to do so prior to the actions of the defendants being brought to light by other members of the Tupelo Police Department.

## CAUSES OF ACTION AND DAMAGES

38. Plaintiff incorporates paragraphs 1-37 above as though specifically set forth herein.

39. Plaintiff suffered loss of employment and promotions.

40. Plaintiff suffered economically because she was forced to resign (constructively terminated) from her employment, and rehired at a less desirable position.

41. Plaintiff endured pain and suffering as a result of the sexual harassment, hostile work environment, retaliation, and assault by Defendants. These damages were the result not only of the aforementioned actions, but also of the conspiracy to silence Lara Mansell and to protect members of the Tupelo Police Department, specifically Lt. Brian Brown and Sgt. Chamila Brown. The Tupelo Police Department often promoted Sgt. Brown in the public eye due to her Latino heritage and her ability to speak Spanish fluently. She was given awards in that capacity and frequently depicted in the media, including social media, as a rising star at the Tupelo Police Department. These actions by the Defendants were taken in spite of the fact that Sgt. Brown could not legitimately qualify for firearms proficiency; and further, that Sgt. Brown could not fairly pass her Sargent's exam.

42. As part of the conspiracy to silence Lara Mansell, she was unable to report these causes of action and she did not do so. These causes of action were reported by another member of the Tupelo Police Department, proving conclusively that others within the department knew of the actions of the Defendants and failed to protect Lara Mansell.

43. Defendants are liable to Plaintiff for Sexual Harassment, a Hostile Work Environment, Retaliation, and Assault and Battery of the person in violation of Title VII

of the Civil Rights Act of 1964, 42 U.S.C. Section 2000(e) *et seq*.}, and 42 U.S.C. Section 1983.

### PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED, PLAINTIFF RESPECTFULLY PRAYS** that the Court cause service to issue in this cause upon the Defendants and that this matter be set for trial by jury. Upon trial by jury thereon, Plaintiff prays that the following relief be granted:

1. Future wages commensurate with promotions and Cost of Living Adjustments;
2. Any back pay;
3. Compensatory damages;
4. Punitive damages;
5. Attorneys' fees;
6. Costs and expenses;
7. Such further relief as is deemed just and proper.

This the 7th day of January 2020.

Respectfully submitted,
Lara M. Mansell, PLAINTIFF

By:*/s/Christi R. McCoy*
Christi R. McCoy (MSB# 9986)

Christi McCoy, Esq.
P.O. Box 1860
Oxford MS 38655
Tel. (662) 816-7251
Email: mccoylawfirm@gmail.com